**In re TOPSY'S SHOPPES, INC. OF KANSAS, Topsy's d/b/a Popperville Pride, Debtor.**

**T.S. NOTE COMPANY, Plaintiff,**

**v. `**

**TOPSY'S SHOPPES, INC. OF KANSAS, United Kansas Bank & Trust, Dick L. Sandifer and Cecilia R. Sandifer, and Johnson County Board of County Commissioners, Defendants.**

**Bankruptcy No. 89–21062–11.**
**Adv. No. 89–6096.**

United States Bankruptcy Court,
D. Kansas.

Sept. 13, 1990.

Donald E. Bucher, Gould and Moore, Kansas City, Mo., for plaintiff.

Chris W. Henry, McDowell, Rice & Smith, Kansas City, Kan., for defendant.

SUPPLEMENTAL OPINION TO JUNE 5, 1990 JOURNAL ENTRY OF JUDGMENT

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the Journal Entry of Judgment signed by this Court on June 5, 1990. In its Order the Court reserved the right to file a supplemental opinion to address issues involved therein in greater detail if a

party to the Journal Entry of Judgment filed a timely appeal. On June 15, 1990, a notice of appeal was filed by T.S. Note Company.

At the May 15, 1990 trial, the plaintiff T.S. Note Company appeared by and through its attorney Donald S. Bucher of the law firm of Gould & Moore. The defendant United Kansas Bank & Trust appeared by and through its attorney, Chris W. Henry of the law firm of McDowell, Rice & Smith. The other defendants, Dick L. Sandifer and Cecilia R. Sandifer and the Johnson County Board of Commissioners do not appear as their claims had been previously settled.

## FINDINGS OF FACT

Based upon the pleadings and the record, this Court finds as follows:

1. That on July 6, 1989, the debtor, Topsy's Shoppes Inc. of Kansas (hereinafter "debtor") filed a voluntary Chapter 11 bankruptcy petition.

2. That on October 6, 1989, this Court signed its Order Approving Sale Free and Clear of Liens of certain of the debtor's properties to Ramm Acquisition Corp., Joe Serwatka, Matt Hansen, A.H.B., Inc., Topsy's Popcorn of Antioch, Inc. and Golden Harvest Popcorn Company.

3. That as part of this sale, the Ramm Acquisition Corporation would receive "All right, title and interest in and to the name Topsy's and all Topsy's logos, trademarks and copyrights." *October 6, 1989 Order,* at 4. That in exchange for this and other personal properties of the debtor, Ramm Acquisition Corporation would pay a total of $135,000. *Id.,* at 9.

4. That on November 15, 1989, T.S. Note Company instituted this adversary proceeding against Topsy's Shoppes, Inc. of Kansas and United Kansas Bank & Trust praying for the Court to determine the validity, extent and priority of claims to the proceeds of the sale of the debtor's assets.

5. That on January 5, 1990, T.S. Note Company filed its First Amended Complaint adding Dick L. Sandifer and Cecilia R. Sandifer and the Johnson County Board of County Commissioners as party defendants.

6. That on April 26, 1990, the defendant United Kansas Bank & Trust and defendants Dick L. Sandifer and Cecilia R. Sandifer filed their Application to Compromise.

7. That on April 30, 1990, within the prescribed time limits as set forth in the Pre–Trial Order, defendant United Kansas Bank & Trust filed its List of Witnesses and Exhibits and its Trial Brief with the Court.

8. That on May 2, 1990, defendant United Kansas Bank & Trust and defendant Johnson County Board of County Commissioners filed their Application to Compromise.

9. That on May 11, 1990, a hearing was held on both Applications to Compromise, at which time, the Application to Compromise between Defendants United Kansas Bank & Trust and Dick L. Sandifer and Cecilia R. Sandifer was sustained. Said Order was executed by this Court on May 15, 1990. The Application to Compromise between defendants United Kansas Bank & Trust and Johnson County Board of County Commissioners was also sustained, and the Order was signed by the Court on May 30, 1990.

10. That on May 11, 1990, defendant United Kansas Bank & Trust filed its Motion to Prohibit Plaintiff from Calling Witnesses or Introducing Exhibits since T.S. Note Company had failed to file its list of witnesses and exhibits with this Court within the time limits as set forth in the parties Pre–Trial Order (These lists were to have been filed at least 15 days prior to trial.)

11. That on May 15, 1990, T.S. Note Company's First Amended Complaint to Determine the Validity, Extent and Priority of Claims came on for trial. The Court first heard the Motion to Prohibit Plaintiff from Calling Witnesses or Introducing Exhibits. After hearing the statements of counsel and their stipulations, this issue was determined to be moot in that the plaintiff offered no witnesses to testify. The case proceeded to trial. The plaintiff

presented a deposition of one Carl Pigg, a T.S. Note Company officer, and offered it as testimony under Rule 32(a), Federal Rules of Civil Procedure, which is adopted by Bankruptcy Rule 7032, The plaintiff then rested its case.

12. After the plaintiff rested the defendant United Kansas Bank & Trust moved for directed verdict. After hearing the arguments of counsel the Court sustained defendant United Kansas Bank & Trust's oral Motion for Directed Verdict, for the reason that the plaintiff T.S. Note Company had failed to present a prima facie case and had not sustained its burden of proof in this matter.

13. That this Court further found that United Kansas Bank & Trust has a prior lien and prior security interest to that claimed by T.S. Note Company, and that this lien was perfected prior to that of T.S. Note Company. In addition, the Court found that the perfected security interest of United Kansas Bank & Trust was sufficiently described.

14. That the Court directed the debtor to disburse the sale proceeds being held in escrow in accordance with the Court's Order.

### CONCLUSIONS OF LAW

■ The party bringing an action to determine the validity, priority or extent of their interests in estate property has the burden of proof. More specifically, the Bankruptcy Code under § 363(*o*) states:

In any hearing under this section—

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

Thus, in the case at bar, T.S. Note Company had the burden of proving that their perfected security interest in the sale proceeds was superior and prior to the perfected security interest of United Kansas Bank & Trust. T.S. Note Company failed to meet its burden of proof.

■ At the trial, T.S. Note Company, appearing solely through its attorney of record, only presented prior deposition testimony of one Carl Pigg, a T.S. Note Company officer at the time of the sale of Topsy's to the debtor. T.S. Note Company offered this testimony pursuant to Rule 32(a) of the Federal Rules of Civil Procedure, which is adopted by Bankruptcy Rule 7032. It was Mr. Pigg's understanding that in order for T.S. Note Company to allow the debtor a $50,000 sales price reduction, T.S. Note Company would have a first position on the franchise rights, trademarks and trade names on the financing statement and security agreement and United Kansas Bank & Trust would have a second position.

Through Mr. Pigg's transcript, T.S. Note Company offered into evidence the financing statement, security agreement and promissory note taken by T.S. Note Company upon their sale of Topsy's to the debtor. After those exhibits were admitted by this Court the plaintiff rested. United Kansas Bank & Trust then moved for a directed verdict which this Court granted.

Based upon the deposition of Mr. Pigg and the admitted evidence, this Court finds that T.S. Note Company did not prove a prima facie case.

Moreover, T.S. Note Company even stated that it did not dispute that United Kansas Bank & Trust's financing statements were filed first (said statements being filed on November 4 and 13, 1987. T.S. Note Company's financing statement was not filed with the Kansas Secretary of State until December 1, 1987). Thus, it was admitted that United Kansas Bank & Trust had a prior perfected security interest. *See* K.S.A. 84–9–312(4) (1986) ("A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.") K.S.A. 84–9–312(5)(a) (1986) ("Conflicting security interests rank according to priority in time of filing or perfection.")

Furthermore, at the trial, the plaintiff and defendant stipulated that there was no written subordination agreement between

the parties whereby United Kansas Bank & Trust would take second position to that of T.S. Note Company on the franchise rights, trademarks and trade names. Thus, no prima facie case was established by T.S. Note Company as to the priority of their claim.

■ Counsel for T.S. Note Company saw this matter as solely a question of law for the Court. In his arguments against the Motion for a Directed Verdict, Mr. Bucher alleged that United Kansas Bank & Trust's financing statement description was insufficient to meet the standards required for perfection by the Uniform Commercial Code which has been adopted by the State of Kansas.

This Court finds that the description as set out on United Kansas Bank & Trust's financing statement and security agreement, is sufficient. The United Kansas Bank & Trust's security agreement and financing statement filed with the Kansas Secretary of State, describes its security interest as follows:

All machinery & Equipment, Furniture & Fixtures, (including automotive), Leasehold Improvements, Inventory and all present and future Accounts Receivable, proceeds arising therefrom, chattel paper, contract rights and *general intangibles,* however evidenced or acquired, now owned, purchased with loan proceeds and hereafter acquired, and all additions and accessions thereto.

K.S.A. 84–9–402 states in pertinent part as follows:

(1) A financing statement may be in a form prescribed by the secretary of state and shall give the names of the debtor and the secured party, shall be signed by the debtor, shall give an address of the secured party from which information concerning the security interest may be obtained, shall give a mailing address of the debtor and shall contain a statement indicating the types, or describing the items, of collateral. *A statement of collateral in a financial statement is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. 84–9–109, or generally identi-fies other collateral by one or more of the following classifications: fixtures, documents, instruments, general intangibles, chattel paper or accounts.*

(emphasis added).

K.S.A. 84–9–106 has defined "general intangibles" to mean:

any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money....

Furthermore, in the Official UCC Comments accompanying K.S.A. 84–9–106 "general intangibles" is defined to include "miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. Other examples are *copyrights, trademarks,* and patents, except to the extent that they may be excluded by Section 9–104(a)." *In re Bucyrus Grain Co., Inc.,* 67 B.R. 336 (Bankr.D.Kan.1986) ("Courts have interpreted [K.S.A. 84–9–106] broadly enough to include: ... a tax refund, computer software, patent rights, *trademarks,* goodwill ..." *Id.* at 340); *See Madison Nat'l Bank v. Newrath,* 261 Md. 321, 275 A.2d 495 (1971).

Thus, this Court finds that the description in the financing statement and security interest of United Kansas Bank & Trust adequately defines the Bank's security interests.

This Supplemental Memorandum shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.